UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

           Plaintiff,

     v.

FLORENCIO PADIN (aka "June" aka "Yun"),
MELVIN FLECHA-MENDOZA (aka "Melvin"),
LUIS PADIN (aka "Chulito"),
GUILLERMO BONILLA (aka "Junito"),
EDWIN PAGAN (aka "Edwin"),
DOMINGA ROSA (aka "Minga"),
JOSE DIAZ (aka "Guayama"),

           Defendants.

REPORT & RECOMMENDATION

03-CR-6044T

---

## PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated May 30, 2003, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 53).

The superseding indictment charges defendants Florencio Padin, Melvin Flecha-Mendoza, Luis Padin, Guillermo Bonilla, Edwin Pagan, Dominga Rosa and Jose Diaz with conspiring to distribute, and to possess with intent to distribute, heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1)(B), 841(b)(1)(C) and 846.  The indictment further charges various of the defendants with substantive narcotics and firearms offenses and seeks forfeiture of certain of their assets.  (Docket # 104).

On January 13, 2005, this Court issued a Report and Recommendation on defendants' motions to suppress photographic identifications made by two confidential government witnesses. (Docket # 190). At the government's request, this Court conducted a bifurcated *Wade* hearing, initially considering only whether the identification procedures utilized were unduly suggestive.[1]

At the first stage of the bifurcated hearing, law enforcement agents testified about the procedures they utilized in obtaining photographic identifications from the two witnesses. According to their testimony, the identifications occurred during the course of interviews with the witnesses concerning an investigation of alleged narcotics trafficking at the Carolina Bakery. During the interviews, the witnesses were presented with packets containing twenty-seven photographs and asked to identify any individuals whom they recognized. The photographs were not randomly selected; rather, each of the photographs depicted an individual who had some relationship to the Carolina Bakery investigation. (*See* Docket # 190). Following the hearing, this Court found that the procedures utilized were unduly suggestive and recommended that a further hearing be conducted to determine whether the witnesses' identifications were independently reliable. (Docket # 190). By Order dated February 17, 2005, Judge Telesca adopted the recommendation of this Court and referred the matter to this Court for a further report and recommendation on the issue of independent reliability. (Docket # 195).

---

[1] A *Wade* hearing refers to a hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether an out-of-court identification resulted from an impermissibly suggestive procedure and, if so, whether it is independently reliable.

On April 6, 2005 and May 17, 2005, this Court completed the bifurcated *Wade* hearing. (Docket ## 198, 220).[2] At the hearing, the government presented the testimony of Carlos Garcia and Alexis Negron – the two previously unidentified witnesses who had made the photographic identifications at issue. The following constitutes my recommendation concerning the reliability of their identifications.

## THE HEARING

Although five of the seven named defendants originally challenged the witnesses' identifications,[3] now only two, Luis Padin and Melvin Flecha-Mendoza, continue to press this challenge.[4] Moreover, Padin has withdrawn his challenge to the identification of him made by Alexis Negron and only challenges the identification made by Carlos Garcia. (Tr.B 2-3).

**A. Testimony of Carlos Garcia:** Carlos Garcia testified that at the time of the hearing, he was detained pending federal charges and was attempting to negotiate a cooperation agreement with the government, pursuant to which he might receive a reduced sentence. (Tr.A 6). During his direct testimony, Garcia identified a photograph of Luis Padin ("Padin") and identified Padin in the courtroom. (Tr.A 6-7). Garcia testified that he knew Padin as "Chulito" and had previously had contact with him on two to four occasions at the Carolina Bakery

---

[2] The transcript of the hearing conducted on April 6, 2005 is hereinafter referenced as "Tr.A __". (Docket # 198). The transcript of the hearing conducted on May 17, 2005 is hereinafter referenced as "Tr.B __" (Docket # 220).

[3] Defendants Florencio Padin and Dominga Rosa did not challenge the admissibility of the photographic identifications.

[4] Of the five who challenged the identifications, three have entered guilty pleas since the hearing – Guillermo Bonilla, Jose Diaz and Edwin Pagan. (Docket ## 201, 226 and 227).

3

between August 2002 and January 2003. (Tr.A 6-8). His meetings with Padin lasted from one hour to as long as an entire day. (Tr.A 8, 57). During one such occasion, Garcia testified, he provided Padin with cocaine and assisted him by cooking the cocaine into crack. (Tr.A 57, 63).

Garcia further testified that on the occasions on which he had contact with Padin, he observed him from a distance of only two or three feet and was able to recognize his face during each meeting. According to Garcia, the lighting conditions were adequate, and Padin did not wear anything to cover his face. (Tr.A 8-9, 59). In addition, Garcia testified that after his initial meeting with Padin, he spoke with him on the telephone and was able to recognize Padin's voice. (Tr.A 58).

Counsel for defendant Flecha-Mendoza did not appear or participate in the hearing at which Garcia testified, notwithstanding that notice of the hearing was issued to counsel for all defendants. (Docket # 196). At the hearing, government counsel did not question Garcia specifically about his prior contacts with Flecha-Mendoza. In the course of testimony about his contacts with the other defendants, however, Garcia explained that an individual whom he knew as "Melvin" had been present at the bakery on several occasions when he was there. (Tr.A 17, 19, 20, 40, 50 and 52).

Following the hearing, counsel for Flecha-Mendoza was permitted to request that Garcia be made available for further examination. (Tr.B 52). He did not do so. Rather, he submitted a letter acknowledging Garcia's testimony concerning "Melvin," but asserting in conclusory fashion that his identification should be suppressed.

**B. Testimony of Alexis Negron:** On the second day of testimony, the government called Alexis Negron, who identified a photograph of Flecha-Mendoza as an

individual whom he had met in 1997 and knew as "Melvin." (Tr.B 9). Negron further testified that he had been introduced to Flecha-Mendoza through his "ex-stepfather," Florencio Padin, who reportedly owned the Carolina Bakery with Flecha-Mendoza. (Tr.B 9-10). Negron explained that he was employed at the Carolina Bakery after it opened and had contact with Flecha-Mendoza on a daily basis during his employment. (Tr.B 11, 22, 27). He also testified that he engaged in drug transactions with Flecha-Mendoza during that time period. (Tr.B 28-30). On the occasions on which he had contact with Flecha-Mendoza, Negron spoke with and observed him from close distances and never had any difficulty seeing his face. (Tr.B 11). His contacts with Flecha-Mendoza occurred before he participated in any photographic identification procedures.[5] (Tr.B 30-31).

## REPORT AND RECOMMENDATION

A defendant has the right not to be subjected to an identification procedure that creates a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In determining whether to exclude a pre-trial identification, the court must undertake a two-step analysis. First, the court must consider, as this Court did in its January 13, 2005 Report and Recommendation, whether the identification procedure was unduly suggestive. If so, the court then must determine whether the identification nevertheless possessed "sufficient aspects of

---

[5] Negron also testified about an additional photographic identification procedure conducted shortly after his arrest in Broome County by a federal agent identified only as "Mike." Although Flecha-Mendoza argues that this procedure was impermissibly suggestive and that any subsequent procedure was thereby tainted, such argument is unavailing. This Court has already determined that the photographic identification procedure utilized was unduly suggestive. The question remaining is whether an independent basis exists for Negron's identification.

reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.), *cert. denied*, 434 U.S. 872 (1977) (citing *Manson v. Brathwaite*, 432 U.S. at 109-17). "Even if the procedure was unnecessarily (or impermissibly) suggestive, therefore, a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

Having found the identification procedures utilized with Garcia and Negron to have been unduly suggestive, this Court must now determine "whether the identification[s] [were] independently reliable, *see Manson v. Brathwaite*, 432 U.S. at 109-114, or whether there was a very substantial likelihood of misidentification." *Neal v. Kuhlmann*, 1988 WL 13781 at *6 (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). In doing so, the court must consider the factors articulated in *Neil v. Biggers*, 409 U.S. at 199. Those factors include "the opportunity of the witness to view the criminal at the time of the [contact], the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness [during the identification], and the length of time between the [contact] and the [identification]." *Id.* at 199-200.

In this case, both Garcia and Negron had extensive contact with the defendant prior to the photographic identifications. Garcia had contact with Padin on two to four occasions, each one of which lasted at least one hour and one of which lasted the entire day. (Tr.A 7-8, 57). Garcia specifically recalled that during one of the meetings, he provided Padin

with cocaine and assisted him by cooking the cocaine into crack. (Tr.A 63). Moreover, Garcia was able to view Padin's face clearly from a distance of only two or three feet. (TrA 8, 59).

Negron testified that has known Flecha-Mendoza since 1997, and indeed worked with him on a daily basis at the Carolina Bakery. (Tr.B 11, 22). He, too, interacted with Flecha-Mendoza from close distances and was able to observe his face clearly and without obstruction. (Tr.B 11-12). In addition, Garcia and Negron were unequivocal in their photographic and in-court identifications of Padin and Flecha-Mendoza, respectively.

In sum, the testimony of both witnesses, as illuminated by a consideration of the factors articulated in *Neil v. Biggers*, establishes that their extensive contact with Padin and Flecha-Mendoza provides an independently reliable basis for their identifications of the defendants.[6] *See United States v. Wolfish*, 525 F.2d 457, 462 (2d Cir. 1975) (independent basis for identification existed where witness had three prior ten-minute meetings with defendant during which defendant had made unusual requests), *cert. denied*, 423 U.S. 1059 (1976); *United States v. Alexander*, 923 F. Supp. 617, 625 (D. Vt. 1996) (finding identification to be independently reliable because witnesses had "extensive contact" with defendants over period of several months); *United States v. Shakur*, 1987 WL 5368, *1 (S.D.N.Y. 1987) (denying request for *Wade* hearing relating to photographic identifications by witnesses who had "extensive, personal contacts with [defendant] in both licit and illicit activities"). Accordingly, it is my

---

[6] Although Garcia was not questioned specifically about Flecha-Mendoza, his testimony makes clear that he was present in the bakery on numerous occasions and had contact with "Melvin" inside the bakery on those occasions. Indeed, counsel for Flecha-Mendoza (who was not present for the hearing at which Garcia testified) was given the right to, but chose not to, recall Garcia to cross-examine him about his testimony. On this record, I recommend denial of Flecha-Mendoza's conclusory assertion by letter that the identification of him by Garcia should be suppressed.

recommendation that Padin's and Flecha-Mendoza's motions to suppress the identifications by Garcia and Negron be denied.

## CONCLUSION

For the foregoing reasons, it is my recommendation that defendants Luis Padin and Flecha-Mendoza's motions to suppress photographic identifications **(Docket ## 139, 143)** be **DENIED**.

       *s/Marian W. Payson*
       MARIAN W. PAYSON
       United States Magistrate Judge

Dated: Rochester, New York
       November  10  , 2005

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                       *s/Marian W. Payson*
                                         MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated: Rochester, New York
       November   10   , 2005

---

[7] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).